Martin J. WELSH and Elsie N. Welsh, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 36882.

United States District Court
N. D. Ohio, E. D.

Oct. 5, 1962.

Daniel R. McCarthy, Cleveland, Ohio, for plaintiffs.

Leonard Goldberg and Solomon Fisher, Tax Div., Dept. of Justice, Washington, D. C., for United States.

CONNELL, Chief Judge.

The present action is brought by the taxpayer against the Government for the refund of certain taxes alleged to have been erroneously assessed and collected. The case was heard before this Court and the opposing parties submitted briefs. We shall quote from the brief of the Government the statement of facts which are not in dispute:

"Taxpayers timely filed joint income tax returned for each of the years 1955, 1956 and 1957 with the District Director of Internal Revenue. Subsequently, the taxpayers timely filed claims for refund alleging, *inter alia*, that, although not originally

so claimed on their returns, they were entitled to an additional deduction in each of the years for certain educational expenses incurred by taxpayer, Martin J. Welsh. These claims were disallowed, and this action followed. Since Elsie N. Welsh is a plaintiff solely because joint returns were filed, references to taxpayer will be to Martin J. Welsh only.

"The sole issue in this case is whether taxpayer may properly deduct, under Section 162 of the Internal Revenue Code of 1954, expenditures for tuition and books in obtaining a law degree. The taxpayer expended $388.12 in 1955, $423.47 in 1956 and $536.07 in 1957 for tuition and books. The Government disputes that they are properly deductible.

"In February, 1955, taxpayer enrolled as a degree candidate at the Cleveland Marshall Law School. (Tr. 38, 47.) At this time, he was an Internal Revenue Agent assigned to a Fraud Group, but he had requested a transfer to the Intelligence Division of the Internal Revenue Service as a Special Agent and had been promised the transfer. Shortly after entering law school, he was transferred to the Intelligence Division as a Special Agent. (Tr. 60.)

"As a degree candidate, he attended law school at night until he received his LL. B. degree in April, 1959. He took the bar examination of the State of Ohio in July of 1959 but did not pass. (Tr. 35.)

"In March of 1960, taxpayer took the Bar examination again, passed and he was admitted to the Ohio Bar in June of 1960. Shortly thereafter, on July 5, 1960, taxpayer left the employ of the Internal Revenue Service and entered the private practice of law in Cleveland, Ohio."

The issue presented to the Court is the deductibility of the educational expenses as ordinary and necessary expenses within the contemplation of Section 162(a) of the Internal Revenue Code of 1954. Both parties claim support from the Regulations under that section. Section 1.162–5(a) provides that educational expenditures are deductible if the education is undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business. This is the only applicable portion of the Regulation. The commentary under that Regulation is as follows:

"Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph."

Under paragraph (b), the following tests are described:

"Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, expense of such education is personal in nature and therefore is not deductible."

■ With this introduction or basis for our consideration of the case at issue, we take up first the question of whether the education undertaken was customary for other established members of the taxpayer's trade or business within the meaning of paragraph (a) of the Regulation referred to above. The parties to the action in their presentation of the case in Court and in their briefs did not consider this point separately, nor did they place much importance upon the point. But the Regulation itself clearly indicates that if it is customary within the trade or profession to undertake such an education, the taxpayer will ordinarily be considered to have undertaken the education for the purposes which will allow the deduction. The only evidence upon the point was presented incidentally. The record indicates that several of the taxpayer's co-workers had attended or were in fact attending law school during the time of their government service. More significant to the case of the taxpayer, several of the individuals had obtained their law degree and *remained with the Service*. There was no evidence in rebuttal that this practice of attending law school was at all unusual for parties in the same position as the plaintiff herein. Thus, although we might not be warranted in making a finding that this was the usual or customary practice so as to give rise to the ordinary inference that the educational expenses are deductible, there is certainly no basis for finding the education so unusual as to give rise to a contrary inference. In fact, the evidence in the case, especially that of Mr. Myers, would indicate that the practice is not at all unusual but is in fact one that is and should be encouraged. Moreover, the Regulation indicates that the question of deductibility is to be determined upon the basis of all the facts of each case. For that reason, we believe that hard and fast rules are not available in this area. Although we have been aided by citations of cases by both sides, we have not been referred to any cases we regard as controlling authority in the peculiar facts of this case.

The first sentence in paragraph (b) supra introduces the element of subjective intent into the question of whether the expenses are deductible or not, and this was the basis on which the case was tried. In his opening statement, the attorney for the Government stated, "The primary and really the sole issue in this case would seem to be whether or not Mr. Welsh took these courses for the purpose of maintaining and improving the skills required by him as a Special Agent, or, whether he took these courses for personal reason, among those being to qualify himself to go into the practice of law." (Tr. pp. 15 and 16).

■ Proceeding to the question of the intention of the taxpayer in undertaking the education herein involved, we specifically find as a matter of fact that the primary intention of the taxpayer in undertaking his legal education was to maintain and/or improve the skills required in his employment.

The Government counsel has argued ably that the intention of the taxpayer was to obtain his law degree, leave the Service and enter into the private practice of law. There is no denying that such an intention would bar his claim for a deduction. The greater portion of the Government brief filed in this case is devoted to the question of the inference to be drawn from the evidence in the case.

The case was heard before the Court without a jury, and this Court had the opportunity to listen to the testimony of the taxpayer and observe his demeanor upon the stand. His credibility was called squarely into issue, and this Court finds his testimony logical, consistent and true. The most damaging evidence introduced to impeach were statements of an intention to practice law made to his law school and to the Supreme Court of this state. We find the taxpayer's explanation to be no great strain upon the credulity of the Court. It was his testimony that the law school itself supplied the very statement which is now introduced to show the intention of the taxpayer. Is it not within common experience that applicants seeking any kind of admission

600

anywhere state that which they consider pleasing to those in authority granting or denying admission? It is not in accord with common sense to rely upon such statements alone in the face of very cogent contradictory evidence.

As further evidence of the intention *ab initio* to practice law, the Government points to the taxpayer's taking of the bar exam and his departure from the Service shortly after admission to the bar. Strictly speaking, this is only proof of the intention existing at the time of the specific action. As evidence of the taxpayer's intention at the time of his actual study, it only raises a permissible inference. That inference was refuted by the testimony of the taxpayer to the effect that he did not form the intention to leave the service and enter the private practice of law until after the successful passage of the bar examination. The occasion for the change of intention was a number of offers from people who approached him after he had passed the exam. (Tr. p. 41). This again is consistent with his previous testimony. All of us in the practice of law have experienced a change of plans because of the unexpected opportunity. Significantly, these people approached him, rather than the opposite situation, which supports a belief that his intention to remain with the service survived through the actual passing of the bar examination.

We ground our belief that the taxpayer never entertained an intent to leave the Government Service during the period herein involved not only upon his own convincing testimony, but also upon his situation during the period of his education. The taxpayer was a veteran on whom the war had left an ineradicable mark and for whom Government Service offered the security the doctor prescribed. (Tr. p. 18). It would be a difficult inference from ambiguous acts to a conclusion that the taxpayer would choose to burden himself with evening law school so that he might leave the security of the Government Service his doctor recommends in order to enter the legal profession. Whatever else that profession offers is difficult to categorize, but its principal attraction has never been security.

The Government attacks the individual courses taken by the taxpayer, attempting to show either that some of the courses were of no value in maintaining or improving skills necessary to the work of the taxpayer, or else implying that the courses taken reveal an intention fatal to the cause of the taxpayer herein. The Government points to such courses as Pleading or Legal Writing as examples. Without proceeding to a defense of liberal education, this Court believes that the view of the Government is too restrictive and in fact opposed to the accepted notions of an adequate grounding in any field of the law. The argument of the Government in its full rigor would restrict the permissible area of investigation for this taxpayer to a study only of the peculiar cases with which he was concerned. Although we are not prepared to state that it was absolutely necessary to his profession that the taxpayer be soundly grounded in all areas of the law, it is untenable to categorically deny that any course but taxation could have any value to the taxpayer in his work.

In a broader attack, the Government argues that because the course of education undertaken by the taxpayer results in the acquisition of a new skill, the expenditure is not deductible. A reading of paragraph (b) *supra* indicates that this is only a permissible inference mitigating against a finding of the requisite primary purpose. The Regulations do not say that such a factor is dispositive. We believe that such a rule of thumb is wooden, and does violence to the normal interpretation of the law. Resorting to a *reductio ad absurdum*, such a rule could reduce every dispute in the area to a search for some skill apart from the taxpayer's present trade or profession for which his education prepares him, and if one be found, no matter the intention of the taxpayer, the deduction would be denied. The Regulations indicate that the intention of the taxpayer is dispositive. If the course of study leads to the acquisition of a new skill or

satisfies the express requirements of an advancement, this is an important factor in determining the primary intention of the taxpayer. But if the intention be otherwise established, this factor does not change the result.

In conclusion, we find that the taxpayer has borne his burden. He has established to the satisfaction of this Court his primary intention in undertaking the educational courses, that they are ordinary and necessary within the meaning of Section 162 of the Internal Revenue Code of 1954 and the specific facts of this case, that they were useful in his work in imparting the skill and the confidence beneficial to his employer, and that they were not undertaken for the purpose of acquiring a new skill.

Accordingly, judgment shall be entered for the taxpayer.