**Joseph E. CAMPBELL and Jean S. Campbell**

v.

**UNITED STATES of America.**

**Civ. A. No. 32939.**

United States District Court
E. D. Pennsylvania.

Feb. 28, 1966.

Gordon W. Gerber and Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiffs.

Drew J. T. O'Keefe, U. S. Atty., Francis R. Crumlish, Asst. U. S. Atty., Philadelphia, Pa., Louis F. Oberdorfer, Asst. Atty. Gen., and Victor Schnee, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

DAVIS, District Judge.

The plaintiffs, husband and wife,[1] have instituted this action pursuant to 28 U.S.C. § 1346 to recover certain income tax payments for the years 1960, 1961 and 1962, which they allege were erroneously collected due to the government's refusal to allow them to deduct expenditures for Law School tuition and books under § 162 of the Internal Revenue Code of 1954. The case was tried without a jury before our late brother, Judge Allan K. Grim, but has now been assigned to the undersigned for further proceedings. After a thorough review of the notes of testimony and the briefs and after consultation with the attorneys for both sides, I have concluded that the case can be decided on the basis of the record already made without the necessity of a new trial or further argument.

### FINDINGS OF FACT.

The husband plaintiff (hereinafter referred to as the plaintiff) is a physician who was graduated from Harvard Medical School in 1951; received a Master of Science Degree in Pathology from Ohio State University in 1956; and has been

---

1. The wife, Jean S. Campbell, is a party only because she and her husband filed joint tax returns for the years in question.

certified in Anatomical, Clinical, and Forensic pathology. Anatomical pathology is the study of tissues to determine the diseases present therein; clinical pathology is the study of disease through laboratory examination; and forensic pathology involves the use of the other two branches to investigate disease processes as affected by injury or death from unnatural causes.

The taxpayer has been employed in a professional capacity in the office of the Examiner of the City of Philadelphia since 1956 except for a short interval when he was associated with the Coroner's Office in Cook County, Illinois. The Examiner's office in Philadelphia is quasi-judicial in character and is charged with the duty of investigating deaths which are of a sudden, violent or suspicious nature. It also has the powers of arrest and subpoena, may hold inquests, and under certain circumstances is charged with the duty of maintaining the valuables and effects of deceased owners.

The taxpayer presently has the job classification of "Forensic Pathologist II", which makes him the first assistant to the Examiner himself. The 1960 bulletin published by the City of Philadelphia describes his job as follows:

"This is highly responsible forensic medical work assisting the (Medical) Examiner in the overall administration of the City's medico-legal investigative system and in his absence acting for him in the exercise of various legal functions.

"Work is performed with guidance from the (Medical) Examiner. Assignments are analytical in nature and are carried out in accordance with functional precedents, practices and policies. In the absence of the (Medical) Examiner the employee has primary responsibility for directing the activities of the City's medico-legal investigative system.

"[Forensic Pathologist II] consults with specialists in the field of chemistry, toxicology, bacteriology and immunology and with law enforcement officers in establishing evidence of a medico-legal nature.

"He trains subordinates in medico-legal work; gives talks to professional and lay groups on the City's medico-legal investigative system.

"He conducts inquests upon assignment by the Medical Examiner."

Aside from this pamphlet, the testimony of the plaintiff and the depositions of various witnesses clearly bear out the fact that the plaintiff's position in the Examiner's office has important legal aspects to it. The pathologist is obviously confronted with crimes and their legal definitions; evidence questions; questions of decedent's estates especially when property is found on the body brought into the office; domestic relations' law; torts; and a number of others. Moreover, he must constantly be in touch with police officials and the District Attorney's office. The efficiency and effectiveness of this relationship certainly depends in large part on the extent of the pathologist's legal knowledge.

The office has not had an attorney on its staff since 1960 although all the evidence indicates that many legal problems occur daily. While the Examiner has access to the City Solicitor's office, the latter is not organized so as to give the quick legal advice that is often needed.

In 1956, while on the Examiner's staff, the plaintiff decided to attend law school at night because he found that he was greatly handicapped in his work from his lack of legal education. In 1958, he finally enrolled as a night student in Temple University Law School after receiving the full support of the Examiner himself. He had no intention of working for a degree and did not even register with the Pennsylvania State Board of Law Examiners as required of all law students preparing for admission to the Bar of the Supreme Court of the Commonwealth.

As time went on, however, he resolved to take the full curriculum. He had come to realize that isolated courses would not give him the full and complete understanding of those legal principles necessary and relevant to his work as a forensic pathologist. Furthermore, certain courses could not be taken without a number of prerequisites. Thus, for example, evidence, which at Temple was a third year course, could not be scheduled unless a student had completed the first two years of the curriculum. After 4½ years of attending law school at night,[2] he received his LLB Degree from Temple in February 1963.

At the insistence of Temple, he had registered as a law student with the State Board of Law Examiners and upon receiving his degree, took the Pennsylvania Bar Examination, and passed. He was admitted to the Bar of the State Supreme Court, but has never had any intention of practicing law nor has he ever practiced. While his legal education was in no sense required of him to retain his position in the Examiner's office, he used his knowledge to aid him in performing his job more effectively and to maintain and improve his skills as a forensic pathologist.

During the years, 1960, 1961 and 1962, he attempted to deduct the following items on his income tax returns but the Internal Revenue Service disallowed them.

| Year | Expenses of Law Books | Law School Tuition Expenses | Total Expenses claimed as deductions but disallowed |
|------|------|------|------|
| 1960 | $ 87.50 | $547.00 | $659.70 [3] |
| 1961 | 100.77 | 700.00 | 800.77 |
| 1962 | 94.36 | 820.00 | 914.36 |

The plaintiff has now sued for a refund of the extra taxes paid as a result of government's refusal to permit these deductions.

### DISCUSSION AND CONCLUSIONS OF LAW.

The question presented is whether a forensic pathologist employed in a city Examiner's office charged with investigating sudden, violent, and suspicious deaths may deduct as a business expense under the Internal Revenue Code of 1954, § 162, his expenses for tuition and books incurred in attending law school at night when he continued as a forensic pathologist in the Examiner's office with no intent to abandon this position upon completion of his legal training but rather with the intent to use his newly acquired legal skills to aid him in performing his duties more effectively.

Section 162 of the Internal Revenue Code of 1954 provides:

(a) In General. There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

The pertinent Treasury regulation, § 1.162–5, reads:

"Expenses for education.—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including re-

2. During the short time that the plaintiff was in Chicago, he attended the John Marshall Law School.

3. This figure includes $25.00 paid by plaintiff in 1960 for a pathology workshop by the Amerian Society of Clinical Pathologists. This money was lumped together with the law school expenses on the plaintiff's tax return.

search activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, * * *

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purpose described in subparagraph (1) of this paragraph.

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible. (Emphasis added)."

The courts on a number of occasions have allowed a deduction for law school expenses in situations analogous to the case at bar. In Frazee v. Commissioner 22 T.C.M. 1086 (1963), the taxpayer had been a civilian employee with the air force as a Supervisory Industrial Specialist. His job required him to write air force regulations and policy and procedure documents. He also prepared replies to industrial and congressional inquiries and statements justifying the maintenance engineering materiel programs of the Air Force. The Court found that although his legal studies were partially motivated by his general education aspirations, his primary purpose was to maintain and improve skills needed in his work and that a legal education was "reasonably related to that purpose." The Court added that it was unpersuaded by the fact that it was not customary for those in the taxpayer's position to acquire a law degree.

Baum v. Commissioner, 23 T.C.M. 206 (1964), permitted an insurance adjuster to deduct his expenses incurred in attending law school at night. The Court found that the position of adjuster involved "frequent contact with legally oriented problems," that the taxpayer's motive was to maintain and improve his skills as a claims adjuster, and that he had no intention of leaving the insurance company to practice law.

Charlton v. Commissioner 23 T.C.M. 420 (1964) allowed a certified public accountant associated with his father's accounting firm to claim a deduction for his law school books and tuition. The court found that the position of accountant had many legal overtones and that the taxpayer undertook studies to be in a better position to cope with accounting problems and to maintain and improve his skills in this regard. The more recent case of Kilgannon v. Commissioner, 24 T.C.M. 619 (1965), involving an accountant, is in accord.

The tax court has also allowed a deduction for law school expenses to Estate

and Gift Tax Examiners with the Internal Revenue Service. Fortney v. Campbell 64–1 U.S.T.C. ¶ 9489 (1964); Schultz v. Commissioner 23 T.C.M. 1372 (1964); Brennan v. Commissioner 22 T.C.M. 1222 (1963). In each, the court held that the taxpayer went to law school to improve his proficiency as an Internal Revenue Examiner. See also Welsh v. United States, 210 F.Supp. 597 (N.D. Ohio 1962), aff'd 329 F.2d 145 (6th Cir. 1964).

■ The respondent in this case emphasizes that it is not customary for a forensic pathologist to acquire a law degree and points to the fact that the plaintiff only knows of four others out of a total of over 200 throughout the country who are also lawyers. Although treasury regulation § 1.162–5 establishes as one possible criterion for the deduction whether it is customary for other members of the taxpayer's business or profession to undertake such education and a number of cases that have allowed deductions have found that it was in fact customary for those in the taxpayer's profession to attend law school, this factor is by no means controlling. Frazee v. Commissioner, supra. Otherwise, the person who is a pioneer in his field in attempting to maintain and improve his skills beyond what his fellows have done would be denied a tax deduction while the more diffident individuals who enroll in law school after the custom is established would have this benefit. This hardly seems equitable, and this court will not read such an interpretation into the statute absent clear language to that effect.

The government stresses that since many of the taxpayer's law school courses had no direct relationship to his position as a forensic pathologist, he was only fulfilling his general educational aspirations. For this proposition, the government relies on Engel v. Commissioner 21 T.C.M. 1302 (1962) which denied a tax deduction to an Income Tax Agent with the Internal Revenue Service, who decided to attend law school at night While it is true that one of the factors on which the court based its decision in that case was the irrelevance of a number of courses the taxpayer took, it also found that he desired to make the legal profession his life work and that in order to obtain his law degree he passed up some additional correspondence courses offered by the Internal Revenue Service specifically designed to improve his skills in his present position. The court there held that under all the evidence the taxpayer's primary purpose was not to maintain and improve his skills in his present job.

In the Frazee, Baum, Charlton, Kilgannon, Fortney, Schultz, and Brennan cases, supra, it was never pretended that the taxpayer would utilize directly in his work all the courses of his curriculum; yet, the courts have allowed the deductions. It would seem to this Court artificial to restrict the taxpayer to those subjects which are inextricably related to his employment. As can be seen from the facts in this case, the plaintiff had to take certain prerequisites at Temple Law School before he could take other courses which were of particular need and interest. Furthermore, as all who have attended law school know, a legal education is not a series of isolated subjects; it is rather a progression of courses that are interrelated and built upon one another. It is very difficult to understand and appreciate any single subject fully if it is cut off from the others. See Welsh v. United States, supra.

■ The court concludes that the plaintiff was a credible witness, met his burden of proof, and undertook his law school education to maintain and improve his skills as a forensic pathologist with the Examiner's office of the City of Philadelphia. His expenses for tuition and law books for the years 1960, 1961, and 1962 are deductible pursuant to § 162 of the Internal Revenue Code of 1954.

## ORDER

And now, this 28th day of February 1966, it is hereby Ordered that the defendant pay to the plaintiffs the sum of

$215.91, together with legal interest thereon from November 3, 1961; the sum of $240.23 with legal interest thereon from April 15, 1962; and the sum of $274.31 with legal interest thereon from April 15, 1963.