**Ramon M. GREENBERG et al.,
Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 6751.**

United States Court of Appeals
First Circuit.

Heard Sept. 12, 1966.

Decided Oct. 25, 1966.

Ramon M. Greenberg, pro se.

Jonathan S. Cohen, Attorney, Department of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Meyer Rothwacks, Attorney, Department of Justice, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

The sole question in this case is whether the Tax Court erred in denying a deduction claimed by petitioner, a psychiatrist, as an "ordinary and necessary" business expense, for the cost of his own analysis as part of an extensive training program in psychoanalysis.

The availability of the deduction claimed under 26 U.S.C. § 162(a) depends upon the pertinent 1954 Treasury Regulations, which are set forth in the margin.[1] The critical question raised by these regulations is whether petitioner's psychoanalytic studies, including his own analysis, were undertaken to improve his skills as a psychiatrist or were for the purposes of obtaining a new position, obtaining a substantial advancement in position, or fulfilling his general educational aspirations.

The facts found by the Tax Court, apart from stipulated data concerning the profession of psychiatry and the purpose of the Boston Psychoanalytic Institute, covered the psychiatric education and experience of petitioner and his undertaking a six or seven year training program at the Boston Institute. In these respects the facts are very similar to those in Arnold Namrow, 1959, 33 T.C. 419, aff'd, 4 Cir., 1961, 288 F.2d 648, cert. denied, 368 U.S. 914, 82 S.Ct. 192,

7 L.Ed.2d 132, and Grant Gilmore, 1962, 38 T.C. 765.

In this case, as in those, a psychiatrist, having completed medical school, internship, and at least one year of psychiatric residency, qualified for the practice of psychiatry, and, while engaging in such practice, pursued a lengthy institute-sponsored training program in psychoanalysis. Such a program consisted of several years of the taxpayer's own analysis, seminars and courses in psychoanalytical theory, and the supervised handling of several patients over a lengthy period. On the satisfactory completion of such a program, the psychiatrists would be eligible for membership in the particular psychoanalytical institute and recognized as full-fledged psychoanalysts. In all three cases the taxpayer unsuccessfully claimed that the training in psychoanalysis was undertaken primarily to improve his skills as a psychiatrist, the Tax Court holding that the dominant purpose was to prepare for the practice of a separate specialty, psychoanalysis.

Omitted from the findings of fact in this case is the considerable testimony of petitioner, the only witness, relating to his purpose in taking extended training in psychoanalysis. Since the regulations above quoted in footnote 1 make purpose

1. 26 C.F.R. § 1.162–5(a) and (b):
 "Sec. 1.162–5 *Expenses for education.*
 "(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:
 "(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business. * * *
 \* \* \* \* \*
 "Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * *
 "(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible."

of the taxpayer central in the determination of such questions, since the judge who heard this testimony found it not only "uncontradicted" but "believable",[2] and since it goes substantially beyond such evidence in *Namrow* and *Gilmore,* it is appropriate to summarize it briefly.

Petitioner, even while in medical school, became interested in the application of psychoanalytical thinking to neurophysiological data, writing a paper on the subject. Although he had resolved, during his time in medical school, to become a psychiatrist, he postponed his psychiatric residency one year to allow him to study neurology, which he felt to be important to his future work as a psychiatrist. He then took two succeeding years of psychiatric residency. These two years, together with his year in neurology, met the minimum psychiatric board requirement. He did not seek additional years of psychiatric residency because, he said, he then had in mind obtaining psychoanalytic training as "a continuation of my psychiatric training".

As he began his practice as a psychiatrist with the Boston Veterans Administration Hospital, he also applied for admission to the Boston Psychoanalytic Society and Institute, writing in his application, "At this point, my choice of psychiatry as a specialty seems a happy one. * * * I feel that with psychoanalytic training, I may be able to gain more understanding of the function of the mind and also will be able to help emotionally ill patients achieve a better living adjustment."

In defending this purpose as not being unusual, petitioner testified that over 90 per cent of those associated with the Boston Institute spend "more or less of their time" teaching psychiatric residents, teaching psychiatry to medical students, and doing psychiatric research. He referred to articles in professional journals on the place of psychoanalysis in psychiatric training; a foundation grant to train young psychiatrists in psychoanalysis to further their work in psychiatric research; and National Institute of Health career fellowships in psychiatry, which included psychoanalytic training.

Petitioner gave testimony at length on the connection of each part of the psychoanalytic training program to the work of a psychiatrist. Personal analysis helped, he said, to remove one's own "blind spots" and to work more easily with a patient. The study of basic psychoanalytical theory, covered only sparsely in medical school and psychiatric residencies, was "one of the basic sciences in psychiatric thinking" and, more particularly, was useful in his own work in teaching psychiatric residents and as a prerequisite to research. The supervised handling of several cases in depth and at length, petitioner testified, was "one of the main dividends", giving insights into the problems of other patients he would see in the course of his regular work.

As to petitioner's future plans, he testified that he would continue to work part-time at the Boston Veterans Administration Hospital, where he teaches and does research, and to continue to conduct a private practice. He would apply psychoanalytical methods, either "classical" or "modified" as the needs of the patient indicated. As to referrals, he testified, "I think in terms of my being a better psychiatrist, for having this training, that the referrals will come."

Finally, respondent's counsel, at the conclusion of his cross-examination, asked: "Is it your position in this case that you undertook the analytic training and the supervised clinical work and the theoretical instruction to improve your field [sic] as a psychiatrist?" To which petitioner answered, "That is right."

The opinion of the Tax Court majority cited *Namrow* and *Gilmore* where the pursuit of a lengthy program of psychoanalytic training was held to be for the purpose of acquiring a new specialty or a new skill, and not the sharpening of a skill already possessed. It went on to

2. 45 T.C. at 485 (Fay, J., dissenting).

say that these two cases could not be rationally distinguished from that of petitioner. It further pointed out (1) that, while petitioner had stated his reason as that of improving his skills as a psychiatrist, he did not say that this was his "primary" reason;[3] (2) that he did not say that he did not intend to practice psychoanalysis upon graduation; (3) that in fact petitioner's testimony indicated his intention to treat some patients with psychoanalysis; and (4) that it is a reasonable inference that when petitioner testified about hoped-for referrals, he meant referrals for psychoanalytic treatment. From these specific observations the Tax Court arrives at its final conclusion, phrased in the negative: "This record would hardly warrant a finding that petitioner did not intend to hold himself out as a practicing psychoanalyst when he completed his six-year course at the Institute."

We reverse. We have set forth the substance of petitioner's testimony and the Tax Court's opinion at some length to illuminate our difficulty. For we do not take issue either with any specific finding of fact or with any inference drawn therefrom except the final conclusion. Our action is based on our conviction that, reviewing the entire evidence, "a mistake has been committed". Commissioner v. Duberstein, 1960, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

The error lies in the automatic assumption, which contravenes the overwhelming weight of the evidence in this case, that the acquisition of a "specialty" is inconsistent with the improvement of skills required for the practice of a pre-existing profession. To put the difficulty in terms of the facts of this case, the Tax Court majority deemed it sufficient to ask only two questions: is psychoanalysis a specialty? and is it reasonable to infer that the petitioner intended to use the knowledge and methods which he was learning? Affirmative answers to both questions effectively disposed of the case. The question unasked was: did the petitioner have a primary (and reasonable) purpose of using the lore of this new specialty in improving his skills as a practicing and teaching psychiatrist? Since this is the question required by existing regulations, the failure to answer it in the light of the evidence constitutes reversible error.

■ What is involved in the improvement of skills of a taxpayer in his employment, trade, or business reflects the complexity and variety of our society itself. Perhaps the worker tightening bolts on an assembly line· may be said to require only one skill. But most occupations require a bundle of skills. And, to the extent that one is engaged in a learned profession, he must employ a multiplicity of skills. The fact that what is newly acquired by a taxpayer may be recognized as a "skill" or a "specialty"—or, as is usually the case, another group of skills—is irrelevant if the taxpayer's primary purpose is to add to his equipment in carrying on his pre-existing vocation. Some of the cases cited in the margin have gone quite far in allowing deductions for training of less proximate relevance than that indicated by the testimony in this case.[4] Most of them involved a new "specialty".

---

3. We would assume that assignment of a single-minded purpose to a course of conduct amply covers the requirement of stating a "primary purpose".

4. Welsh v. United States, 6 Cir., 1964, 329 F.2d 145, affirming N.D. Ohio, 1962, 210 F.Supp. 597 (internal revenue agent obtained law degree; despite statement in law school application of intent to practice law and entry into law practice shortly after passing bar examinations, expenses held deductible); Campbell v. United States, E.D. Pa., 1966, 250 F. Supp. 941 (forensic pathologist acquired law degree; expenses held deductible despite evidence that he knew of only 4 out of 200 forensic pathologists having law degree); Fortney v. Campbell, N.D. Tex., 1964, 64–1 U.S. Tax Cas. 92319 (internal revenue examiner obtained law degree); Cosimo A. Carlucci, 1962, 37 T.C. 695 (industrial psychologist obtained Ph.D. degree); John S. Watson, 1959, 31 T.C. 1014 (internist pursued psychoanalytical

The regulations attempt to delineate the area of deductible education not only by the positive language referring to improving skills but by proscriptive language. Education pursued primarily to obtain "a new position or substantial advancement in position" and to satisfy "general educational aspirations or other personal purposes" is beyond the pale. Most of the cases holding against the taxpayer do so, not on the ground that he was studying another field of learning, but on the ground that his intent was to change the direction or nature of his career or to qualify for a specific job opportunity.[5]

Of the cases which have come to our attention, only *Namrow* and *Gilmore* seem out of harmony with this parallel line of cases.[6] These decisions may have stemmed from insufficient evidence of the reasons why a psychiatrist would consider psychoanalytic knowledge as helpful in his psychiatric practice. In any event the holdings have hardened into what we consider the unrealistic doctrine that, since psychoanalysis is a specialty (and is practiced exclusively by some), it cannot be considered as an improvement in skills for a psychiatrist who will, depending on his patient's needs, utilize whatever combination of drug, chemical,

training, subjecting himself to analysis, for three years; court concluded that techniques learned were useful in his general field of practice); Frank Kilgannon, 1965, 24 CCH Tax Ct.Mem. 619 (accountant studied law); Milton L. Schultz, 1964, 23 CCH Tax Ct.Mem. 1372 (internal revenue agent attended law school; deduction allowed despite intent to qualify as an estate and gift tax examiner); Walter T. Charlton, 1964, 23 CCH Tax Ct.Mem. 420 (certified public accountant associated with father's accounting firm obtained law degree); Richard M. Baum, 1964, 23 CCH Tax Ct.Mem. 206 (claims adjuster attended night law school; despite petitioner's statement in law school application that he intended to practice law "if possible", expenses held deductible); William J. Brennan, 1963, 22 CCH Tax Ct.Mem. 1222 (estate and gift tax examiner attended night law school; despite statement in law school application that petitioner intended to practice law in Colorado and his subsequent departure from his government job, expenses held deductible); Donald P. Frazee, 1963, 22 CCH Tax Ct.Mem. 1086 (civilian employee of Air Force, whose job included answering Congressional inquiries, writing speeches, regulations, policy and procedural documents, attended law school; expenses held deductible); Sabino F. Ciorciari, 1963, 22 CCH Tax Ct.Mem. 784 (New York Housing Authority employee obtained graduate degree in Housing and Public Administration; despite some courses bearing little relationship to petitioner's job, court held expenses deductible, saying that they "were reasonably thought by him to be related to his job". Id. at 785.).

5. Huene v. United States, S.D.N.Y., 1965, 247 F.Supp. 564 (college graduate, whose employment consisted of routine clerical duties, not allowed to deduct expenses of law and business school; court observed that he was neither accountant nor lawyer); Markham v. United States, S.D. N.Y., 1965, 245 F.Supp. 505 (psychologist undertook psychoanalytical training to become a psychoanalyst and/or a psychotherapist); Joseph T. Booth, 1961, 35 T.C. 1144 (young lawyer attended tax institute to prepare for his role in new partnership); Harry G. Gianakon, 1965, 24 CCH Tax Ct.Mem. 965, aff'd, 3 Cir., 358 F.2d 731 (psychologist preparing for new position, head of child study center); John Lezdey, 1964, 23 CCH Tax Ct.Mem. 485 (chemist studied law; held expenses not deductible since petitioner began job to which law would be relevant after commencing the legal studies); Gilmore C. Gulbranson, 1963, 22 CCH Tax Ct.Mem. 1022 (insurance employee clearly manifested intent to practice law in his application to law school); Ansis Mitrevics, 1963, 22 CCH Tax Ct.Mem. 271 (petitioner, at time of specialized training, had left job to which the added education might be relevant); James J. Condit, 1962, 21 CCH Tax Ct.Mem. 1306, aff'd, 6 Cir., 1964, 329 F.2d 153 (construction company employee attended law school; intent was to pursue law with his company); Bernd W. Sandt, 1961, 20 CCH Tax Ct.Mem. 913, aff'd, 3 Cir., 1962, 303 F.2d 111 (chemist studied law to obtain a new position).

6. We have excluded as irrelevant cases directed to the question whether an employee was required to pursue further education or whether he undertook such education for general purposes.

hypnosis, occupational, industrial, insulin, shock, and psychoanalytical therapy seems to be indicated.[7]

 Primary purpose under the quoted regulations is to be determined by the facts of each case. The petitioner testified at length on the interrelationship of psychoanalytic knowledge and methods and the work of one engaged in practicing psychiatry, teaching psychiatric residents, and doing psychiatric research. There was no evidence to the contrary.

The unrebutted testimony even went so far as to indicate that it was not unusual for other members of petitioner's profession to undertake such education. Under the regulations, if customary conduct is proved, " * * * the taxpayer will ordinarily be considered to have undertaken this education for the purposes [of improving skills]. * * * " While the evidence on this point might not compel a finding of custom, it at least forecloses any inferences which might be drawn from unusual conduct.

There was no evidence that petitioner had any other "position" in mind than that of continuing his part-time work at the Boston VA Hospital and his part-time psychiatric practice. There was no hint of any purpose to secure a "substantial advancement in position", except the obvious aim to increase in stature in his profession. Nor could it be said that the six or seven year program was to fulfill his general educational aspirations or other personal purposes.

The Tax Court's difficulty seems to stem from its appropriate findings and inferences that petitioner intended to apply what he was learning when it was applicable. Without addressing itself to the question required by the regulations, i. e., whether or not the petitioner had succeeded in showing that he was motivated principally to improve his skills as a psychiatrist, it took a long leap in concluding that petitioner's primary purpose was to hold himself out as a practicing psychoanalyst. If this means that petitioner intended wholly or substantially to abandon his practice of psychiatry and his position at the Hospital, there is no support whatsoever in the evidence. If this means that petitioner would, in the course of his practice, administer psychoanalysis in varying degrees without having to refer patients to others, it does not support the court's decision under the regulations.

Without making any generalizations as to how far the Tax Court can, with propriety, disregard uncontradicted evidence, we believe in this case that if the court's decision did not reflect an erroneous application of the regulations, it reflected an unjustified rejection of unimpeached and credible testimony. In either case, the decision must be reversed.

---

**7.** Indeed, two judges of the Tax Court, in their concurring opinion below, deem that *Namrow* and *Gilmore* "stand for the proposition that where a taxpayer has acquired a new skill, whether or not that skill will aid him in the carrying on of an existing trade or profession, the expense of acquiring the new skill is personal in nature and nondeductible. * * * " Were this the case, not only would the words of purpose have been read out of the regulations but many of the authorities cited in footnote 4, supra, would no longer have validity.

We think the language of the court in Welsh v. United States, N.D. Ohio, 1962, 210 F.Supp. 597, at 600, well expresses our own view: "In a broader attack, the Government argues that because the course of education undertaken by the taxpayer results in the acquisition of a new skill, the expenditure is not deductible. * * * We believe that such a rule of thumb is wooden, and does violence to the normal interpretation of the law. Resorting to a reductio ad absurdum, such a rule could reduce every dispute in the area to a search for some skill apart from the taxpayer's present trade or profession for which his education prepares him, and if one be found, no matter the intention of the taxpayer, the deduction would be denied."