Marshall L. Helms, Jr., and Christine D. Helms v. Commissioner.
Helms v. Commissioner
Docket No. 2301-67.
United States Tax Court
T.C. Memo 1968-207; 1968 Tax Ct. Memo LEXIS 93; 27 T.C.M. (CCH) 1020; T.C.M. (RIA) 68207; September 19, 1968. Filed *93 Petitioners, husband and wife, were employed as an aeronautical engineer and medical records librarian respectively during 1965. Each attended law school in that year. In the fall of 1965 the husband left his employment as an aeronautical engineer to finish law school on a full-time basis. Upon graduation from law school and admission to the bar he became an attorney. The wife had attended law school before she became a medical records librarian. In January 1967 she resigned her position to attend law school on a full-time basis. Held, that the study of law was undertaken by both petitioners primarily for personal purposes and that the expenses incurred are not deductible as ordinary and necessary business expenses under sec. 162(a), I.R.C. 1954, and sec. 1.162-5, Income Tax Regs.
Marshall L. Helms, Jr., pro se, 425 Lindbergh Dr., Atlanta, Ga. David S. Meisel, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $322.16 in petitioners' income tax for the year 1965. The asserted deficiency results from the respondent's disallowance of claimed deductions for education expenses. The only issue for decision is whether *94 the education expenses incurred by petitioners in attending law school are deductible as ordinary and necessary business expenses. Findings of Fact Marshall L. Helms, Jr., and Christine D. Helms (herein called Marshall and Christine) are husband and wife. Their legal residence was Atlanta, Georgia, at the time they filed their petition in this proceeding. Their joint Federal income tax return for the year 1965 was filed with the district director of internal revenue, Atlanta, Georgia. On their income tax return the petitioners claimed, as deductible business expenses, the total amount of $1,852.50 which consisted of $1,241.50 incurred by Marshall and $611 incurred by Christine in attending law school during 1965. In his notice of deficiency respondent determined that the amounts expended by petitioners for their legal education were nondeductible personal expenses. Facts Relating to Marshall L. Helms, Jr. Marshall attended college at the Georgia Institute of Technology in Atlanta, Georgia, where he received his Bachelor of Aeronautical Engineering degree in December 1958. Shortly thereafter, he accepted employment as an aeronautical engineer with Pan American Airways in Miami, Florida, *95 and remained with Pan American until he resigned in July 1962. In September 1962, Marshall applied for admission to the Emory University Law School (herein called Emory) in Atlanta and subsequently enrolled in its evening program as a candidate for the bachelor of law degree. Emory required all of its law students to enroll as a degree candidate. On or about September 21, 1962, Marshall accepted employment as an aeronautical engineer with Delta Air Lines (herein called Delta). In 1963, after complying with the requirements of the Georgia State Board of Registration for Professional Engineers and Land Surveyors, Marshall became a licensed Registered Professional Engineer in Georgia. During the year 1965 Marshall was employed by Delta in the capacity of an engineering supervisor. He was fully qualified for the duties and responsibilities of his position with Delta at the time he was employed. The engineering department of Delta was comprised of approximately 85 employees, about 50 of whom were engineers in different categories, including aeronautical, civil, electrical, and mechanical. They were employed in positions similar to that held by Marshall. Delta had its own legal staff and, *96 in addition, often had to retain outside counsel because of its vast interstate operations. It was not the duty of Marshall or any of the other engineers to represent Delta in legal matters. 1021 Marshall was assigned to a unit of engineers designated as the "structures" group, which was comprised principally of aeronautical engineers, whose primary responsibility was to maintain surveillance over the structural integrity of Delta's aircraft with a view towards avoiding accidents and other service problems arising from structural failures of aircraft components. In the course of his employment, Marshall assisted in the preparation of technical specifications which were included in aircraft purchase agreements prepared by Delta's legal staff. He also assisted in the drafting and preparation of agreements with outside contractors to perform overhauls of aircraft components. As a member of Delta's engineering staff, he also assisted the company in its efforts to comply with the regulations promulgated by the Federal Aviation Agency. Marshall helped maintain surveillance over the numerous contractual warranties which Delta had with the manufacturers and suppliers of its aircraft equipment. *97 He helped to determine the existence of warranty claims and possible negligence on the part of the company or outside contractors, manufacturers and suppliers. Information developed in this regard, where appropriate, was forwarded to the company's warranty claims department for action. Once a legal problem had been identified, it was handled by the company's legal staff. Delta had no express requirement that Marshall or any other of the engineers had to obtain a law degree as a condition to the retention of salary, status or employment. Only four or five of the engineers employed by Delta in 1965 had some legal education. The engineers were able to perform their jobs satisfactorily without any legal knowledge or training. Marshall attended Emory's evening program from the fall term of 1962 until the fall term of 1965, after which time he resigned from his position with Delta and enrolled as a full-time day student. In his letter of resignation to Delta, he stated: "I am leaving to return to school to study." There was no understanding or agreement with Delta that he would return to their employ when he completed his course of legal education. Upon graduating from Emory in August 1966, *98 Marshall took and passed the Georgia bbar examination. In November 1966, he accepted a position as law clerk to a judge of the Superior Court of Fulton County, Georgia, and at the time of trial of this case he was employed as a law assistant to a judge on the Georgia Court of Appeals. Facts Relating to Christine D. Helms After graduating from Hollins College in Virginia in 1961, Christine took a 1 year course of study in Medical Records Science at Emory University in Atlanta, Georgia. She completed the course on December 7, 1963, at which time she took and passed the required examination to become a medical records librarian. Christine enrolled in the Emory University Law School in the fall term of 1963. She was required to enroll as a candidate for the bachelor of law degree. She attended law school at night during 1964 and 1965, except for the fall term of 1965 when she attended during the daytime. She also attended law school during the day in the winter and spring of 1966. During 1964 she worked part time in the Medical Records Department of the Emory University Hospital, but not as a medical records librarian. On January 12, 1965, Christine accepted employment with St. Joseph's *99 Infirmary (herein called Infirmary) in Atlanta as a medical records librarian, which position she held throughout that year. She left her employment with the Infirmary in January 1967. At the time of the trial of this case she was attending law school on a full-time basis. Among the courses which Christine was required to take in the medical records science program were anatomy, terminology, ethics, medical-legal studies, statistics and coding, used to establish indices for research. In the medical-legal course she studied the hearsay rule, privileged communications, property and property rights. In addition to text books used in the course, the teacher provided the students with materials on current problems. Christine was employed by the Infirmary as the chief medical records librarian. Under her supervision were an assistant librarian and 15 to 17 other employees. Christine reported directly to the assistant administrator of the Infirmary. Christine and the employees under her supervision were responsible for the maintenance and filing of all medical records containing information with regard to patients during their stay in the hospital, both as in-patients and out-patients. Her *100 duties and responsibilities with the hospital in 1965 also involved requests for the release of medical records and information which these 1022 records contained. In these matters she dealt with insurance companies, attorneys' witnesses, and workmens compensation agencies. The hospital provided Christine with guidelines to assist her in determining whether or not requested medical information should be released. When medical records were subpoenaed for use in legal proceedings, Christine discussed the matter with the Infirmary's assistant administrator and they decided what course of action to take. Although the assistant administrator did not ordinarily consult with outside legal counsel upon the routine release of records, he did so on occasion. Christine was responsible for seeing that complete and accurate medical records were made available in response to subpoenas. It was her duty to produce such records and to authenticate them. Her testimony in court cases was limited to the medical records in her custody. Some of Christine's duties involved handling consent forms concerning admissions to the hospital, operations, the taking of pictures and for performing autopsies. The hospital *101 generally provided the staff with various consent forms, some prepared by outside attorneys and others by the assistant administrator and the medical records librarian with the use of medical-legal texts as their guides. Christine also assisted the Infirmary in meeting the standards for compliance with the Federal Medicare program. The Infirmary did not require Christine to undertake the legal education as a condition to the retention of her salary, status or employment. None of the other medical records librarians employed by the Infirmary had any legal training apart from that received in the Medical Records Science course. Ultimate Finding The expenses incurred and paid by both petitioners during 1965 in attending law school were for education undertaken primarily for personal purposes. Opinion 1. Legal education expenses of Marshall L. Helms, Jr. The education expenses incurred by Marshall are deductible under section 162(a), Internal Revenue Code of 1954, [1] *102 if they are ordinary and necessary business expenses. Section 1.162-5, Income Tax Regs., [2] provides, in pertinent part, as follows: (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purpose described in subparagraph (1) of this paragraph. * * * (b) Expenditures made by a taxpayer for his *103 education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible. Marshall contends that the expenses he incurred in attending law school during the year 1965 were for education undertaken 1023 primarily to maintain or improve skills required of him in his employment as an aeronautical engineer and that his legal education had a reasonably *104 proximate relation to such purpose. [3] Respondent, on the other hand, counters with the argument that Marshall's primary purpose was not to maintain or improve his skills as an aeronautical engineer, but was to obtain a new position as an attorney, and that a legal education is not proximately related [4] to the purpose of maintaining or improving skills required of an aeronautical engineer. The issues, narrowly framed, are (1) whether Marshall's primary purpose in undertaking the study of law was to maintain or improve needed skills, and (2) whether a legal education was proximately related to such purpose. Whether expenditures are for education undertaken primarily for the purpose of "maintaining or improving skills" required by the taxpayer in his *105 employment must be determined from all the facts and circumstances involved. Section 1.162-5(a), Income Tax Regs.; see also Welsh v. United States, 329 F. 2d 145 (C.A. 6, 1964); and Condit v. Commissioner, 329 F. 2d 153 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court. Because the question is essentially factual, previously decided cases are of little or no precedential value. Petitioners' reliance on the numerous cases cited in their brief is misplaced. Suffice it to say that, after considering these cases, we find each one sufficiently distinguishable on its facts so that none controls the instant case. The task, indeed a difficult one, of ascertaining Marshall's primary purpose leads us into "the mire of the no-man's land of subjective intent." A person's intent or purpose is usually found by looking at his whole course of conduct and is to be gleaned, as any other fact, from all the evidence and inferences properly to be drawn therefrom. The surrounding circumstances, especially petitioner's actions, must be considered. Marshall relies upon that part of the regulation which provides that where it is "customary for other established members" of a taxpayer's profession *106 to undertake education of the type in question, the taxpayer will ordinarily be considered to have undertaken the education primarily for the purpose of maintaining or improving needed skills. His reliance misses the mark because the evidence herein does not support a finding that it is "customary" for aeronautical engineers to attend law school. At best, the evidence shows that only four or five, out of a total of 50, engineers employed by Delta had obtained some legal training. It can hardly be said that the action of four or five engineers establishes a custom for all aeronautical engineers. There is no evidence as to the extent or nature of the legal training acquired by the other engineers or whether it was acquired by attending law school. Moreover, in order to comply with the "customary" requirement of the regulation, we think it is necessary for the taxpayer to show that it is usual or normal "for other established members of the taxpayer's trade or business" to undertake the type of education in question. We interpret these words of the regulation as meaning a substantial number of those engaged in the same occupation or profession on an industry-wide basis, e. g., aeronautical *107 engineers in general rather than merely those employed by Delta. Of course, there is no evidence in this case as to the custom of aeronautical engineers in general. Hence we cannot conclude that the study of law by aeronautical engineers is usual, normal or customary. Marshall testified that he attended law school to improve his skills as an aeronautical engineer and later changed his mind regarding his professional aspirations. While we do not doubt that Marshall could have had a "change of mind," we do reject his contention that he, in fact, had such a change of mind. His testimony in this respect is no more than a conclusion. He assumed the very thing he was required to prove. It is insufficient to assert his purpose in general terms, he must establish his purpose by specific facts. He has failed to do this. Instead, his testimony is vague, general and equivocal, as indicated by the following excerpt: Being very naive and so on and so forth, I just decided I would * * * it would help me toward becoming president of Pan American Airlines or becoming president of Delta Airlines some day in the future, if I had that type of training. I didn't see where it would be a detriment, 1024 *108 but it would maintain and improve my skills and job, that it wouldn't hurt. It would make my chances of performing my job well, of doing better in the long run * * * The inherent ambiguity in this type of testimony permits several inferences to be drawn, and the inference we draw is that Marshall's purpose in undertaking the study of law was only incidental, and not primary, to maintaining or improving his skills as an aeronautical engineer. Expenditures for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position are not considered deductible business expenses. Section 1.162-5(b), Income Tax Regs.; see also Sandt v. Commissioner, 303 F. 2d 111 (C.A. 3, 1962); Namrow v. Commissioner, 288 F. 2d 648 (C.A. 4, 1961), affirming 33 T.C. 419 (1959); and Joseph T. Booth, III, 35 T.C. 1144 (1961). The legal education undertaken by Marshall expressly met the requirements for a new position, i. e., an attorney. This is an important indication that the education was undertaken primarily for such purpose. Section 1.162-5(b), Income Tax Regs. As we see it, Marshall's actions clearly demonstrate that his primary purpose in attending law school *109 was to obtain a new position as an attorney. He quit his job with Delta to attend law school on a full-time basis; he finished law school; he took and passed the Georgia bar examination; and he immediately started to work as a law clerk for a Superior Court judge. These actions belie his contention that he studied law primarily to maintain or improve his skills as an aeronautical engineer. Relying on Greenberg v. Commissioner, 367 F. 2d 663 (C.A. 1, 1966), Marshall argues that education expenses are deductible, even though the taxpayer acquires a new skill in the process, if the taxpayer's primary purpose is to add to his skills in carrying on his pre-existing employment. We agree. But Marshall's primary purpose was not to maintain or improve his skills in the position he then occupied but was to obtain a new position. For this reason we find the Greenberg rationale inapposite here. In addition to the primary purpose requirement, the regulation requires the taxpayer to show that the education maintains or improves skills required in his employment. The skills required by the taxpayer in his employment are those which are "appropriate and helpful." Cosimo A. Carlucci, 37 T.C. 695 (1962); *110 Rev. Rul. 60-97, 1960 C.B. 69. In our opinion the study of law does not have a reasonably proximate relationship to the maintenance or improvement of skills which are "appropriate and helpful" to an aeronautical engineer. Compare Condit v. Commissioner, supra; Louis Aronin, T.C. Memo. 1961-180; James J. Engel, T.C. Memo. 1962-244; and Donald P. Frazee, T.C. Memo. 1963-217. The skills acquired by Marshall through his legal education are those of an attorney and not those of an aeronautical engineer. The nature of his employment did not require that he attend law school. The particular skills required of him as an aeronautical engineer did not necessitate a legal education. Delta did not require him to have a legal education. And, as we have previously pointed out, it was not "customary" for his associates to obtain a legal education. We conclude that there is no "substantial connection" between a legal education and the maintenance or improvement of skills as an aeronautical engineer. The relationship is too tenuous. The legal training undertaken by Marshall did not have a "significant bearing" on his duties as an aeronautical engineer, at least not sufficient to justify a finding *111 that his educational effort was directed toward maintaining or improving his skills within the purview of the statute and the regulations. Cf. Anthony E. Spitaleri, 32 T.C. 988, 992-993 (1959). It is clear that Marshall was not responsible for handling the legal affairs of Delta, which had its own legal staff and employed outside counsel specifically for such functions. Marshall was a trained engineer and was familiar with the company's needs in his particular area from a technical and scientific standpoint. It appears that much of his time was devoted to serving as a liaison between the company and outside contractors, manufacturers and suppliers. In this regard he fulfilled the needs of the company's legal staff in providing them with technical specifications to be included in various agreements with outside business connections. Such duties did not necessitate a legal education. It is a common occurrence for engineers, architects, chemists and others with technical and scientific backgrounds to provide their legal counsel with necessary technical details. Attorneys cannot be expected to develop certain 1025 information without assistance from competent technicians. However, it *112 was not necessary for Marshall to attend law school to perform his duties. It is true that his duties included the maintenance of surveillance over contractual warranties Delta had with the manufacturers and suppliers of its aircraft equipment. He helped spot the existence of warranty claims and possible negligence on the part of the company or the outside contractors, manufacturers and suppliers with respect to such equipment or their components. But his responsibility was limited to merely pointing out such situations. He assembled and forwarded pertinent information to the company's warranty claims department or to its legal staff. Once the possibility of a legal problem had been spotted, the legal staff took over, and Marshall had no further responsibilities in connection with warranty claims or action with respect to the existence of negligence. Even if we were to assume, arguendo, that a legal education could be proximately related to maintaining or improving the skills of an aeronautical engineer, we are still left with the conviction that Marshall has failed to prove, on this record, that his legal education did in fact maintain or improve his skills. Other than conclusions *113 stated by Marshall and his supervisor at Delta, the record is silent as to the specific manner in which the study of law maintained or improved Marshall's skills. Accordingly, we hold that the legal education expenditures of Marshall do not constitute ordinary and necessary business expenses. They are personal expenses which are nondeductible under section 262. 2. Legal education expenses of Christine D. Helms. Petitioners do not contend that the legal education undertaken by Christine was to maintain or improve skills required of her as a medical records librarian or to satisfy the express requirement of her employer as a condition to the retention of her salary, status or employment. They do contend, however, that notwithstanding the failure to satisfy either of the two requirements of section 1.162-5(a), Income Tax Regs., Christine's law school expenses are deductible as ordinary and necessary business expenses under section 162(a). This contention is untenable because it flies directly in the face of the language of the regulation. As pointed out previously, expenditures for education undertaken primarily for the purpose of obtaining a new position, for the purpose of fulfilling *114 general educational aspirations, or for some other personal purpose are not deductible. Section 1.162-5(b), Income Tax Regs. The fact that Christine's legal education meets the express requirements for a new position, i. e., attorney, strongly suggests that it was undertaken primarily for that purpose. Also the fact that she left her employment with the Infirmary in January 1967 to attend law school on a full time basis supports the view that her primary purpose was to obtain a new position. In addition, the uninterrupted continuity of her education - there being no appreciable break in Christine's formal education from the time she entered college to the date this case was tried - leads us to believe that her legal education, if not undertaken for the purpose of obtaining a new position, was to fulfill her general educational aspirations. Therefore, the expense of such education was of the very type mentioned in section 1.162-2(b), Income Tax Regs., as constituting expenditures personal in nature and nondeductible under section 262. Christine began her legal education in 1963 during the latter part of a 1-year course of study in Medical Records Science at Emory University Law School *115 as a candidate for a degree in law. She completed the medical records science program in December 1963 and continued in law school for over a year before taking her position with St. Joseph's Infirmary in January 1965. She was not employed in her occupation as a medical records librarian during 1963 or 1964 while she attended law school. The expenditures incurred for the earlier part of her education were obviously personal in nature. Canter v. United States, 354 F. 2d 352 (Ct. Cls. 1965). What Christine seeks is a determination that her law school studies, which began for primarily personal reasons, were transformed immediately into deductible business expenses when she became employed at the Infirmary. But she offered no testimony or other evidence to explain such a metamorphosis. In fact, the evidence offered leads to the opposite conclusion. The evidence herein is insufficient to support Christine's contention that her expenses were ordinary and necessary within the meaning of section 162(a). "Ordinary," as used in section 162(a), means "normal, usual or customary." Deputy v. DuPont, 308 U.S. 488 (1940). "Necessary" is defined as "appropriate or helpful." Commissioner v. Heininger, 320 U.S. 467 (1943). *116 Petitioners have failed to show that it was "normal, usual or 1026 customary" for other medical records librarians to study law, or in what particular way Christine's pursuit of a legal education was "normal, usual or customary" for the performance of her duties. We believe it was not necessary for Christine to have undertaken the study of law. She was employed as a medical records librarian, not as a lawyer. Admittedly, a legal education might be helpful in an unlimited number of professions, jobs or businesses. Law is a field so pervasive as to be "helpful" to some extent in virtually every type of employment. But this does not mean that everyone who is gainfully employed is entitled to deduct the expenses of acquiring a legal education. In our opinion a substantially closer relationship with one's occupation than that shown by Christine is necessary to qualify legal education expenses as deductible under section 162(a). Cf. Cosimo A. Carlucci, supra, where an industrial psychologist took specialized courses in the general field of industrial psychology. Finally, Christine argues that the expenses incurred by her in attending law school are deductible on the theory that the legal *117 training which she obtained through her medical records librarian course is an asset which she used in connection with her job and that the cost of her subsequent legal study is similar to money expended to maintain an existing asset used in a trade or business. This argument fails to perceive the essential difference between a deductible business expense under section 162(a) and a nondeductible capital expenditure under section 263. It is well established that expenditures for education necessary to meet the minimum requirements for qualification or establishment in a taxpayer's intended trade or business are not deductible. Section 1.162-5(b), Income Tax Regs. In such circumstances a taxpayer will usually make use of this basic training in his employment; yet the expense is nondeductible. As Justice Cardozo said in Welch v. Helvering, 290 U.S. 111 (1933): Reputation and learning are akin to capital assets, like the goodwill of an old partnership. * * * For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operations of a business. [Emphasis supplied.] Accordingly, *118 we hold that there is no basis for sustaining Christine's claim that her legal education expenditures are deductible as ordinary and necessary expenses incurred in carrying on her trade or business. They were nondeductible personal expenses. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated. 2. All references to section 1.162-5 are to regulations promulgated April 3, 1958, and not to the regulations as amended by T.D. 6918, dated May 1, 1967. Petitioners have elected to rely on the old regulations. Rev. Rul. 68-191↩, I.R.B. 1968-17, p. 5.
3. Marshall does not contend that the legal education undertaken by him was required as a condition for the retention of his salary, status or employment.↩
4. References to "proximately related" are sometimes complemented by phrases like "substantial connection," "significant bearing," and "genuinely related." See Ralph E. Larrabee, 33 T.C. 838 (1960); Eugene H. Walet, Jr., 31 T.C. 461 (1958), affirmed per curiam, 272 F. 2d 694↩ (C.A. 5, 1959).