OWEN L. LAMB AND NANCY G. LAMB, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4509–64. Filed August 2, 1966.

Owen L. Lamb, pro se.
*Jack S. Older*, for the respondent.

SIMPSON, *Judge:* Respondent determined a deficiency in income tax for the taxable year 1962 of $194.99. The only issue for decision is whether petitioner's expenses incurred and paid in 1962 for tuition and books in attending law school are deductible under section 162(a) of the Internal Revenue Code of 1954 [1] as ordinary and necessary expenses of carrying on a trade or business.

#### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

Petitioners, Owen L. Lamb and Nancy G. Lamb, are individuals, husband and wife, residing at 16 Sheldon Drive, Poughkeepsie, N.Y. They filed their joint income tax return for the taxable year 1962 with the district director of internal revenue at Richmond, Va. For convenience, Owen L. Lamb will be referred to as the petitioner.

Petitioner graduated from Rensselaer Polytechnic Institute with a degree in electrical engineering in June 1956. Upon graduation, petitioner was employed by the International Business Machines Corp.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

(IBM) at Poughkeepsie, N.Y., as an electrical engineer. His duties were to design logical circuits in the magnetic tape drive area. As an engineer, he participated in no patent work.

While he was employed as an engineer, petitioner made an "invention" and applied for a patent on this invention. Petitioner at that time "got the idea to become a patent attorney, or a patent agent." He talked with the manager of the patent department at IBM and received information about IBM's patent training program.

IBM established in 1957, and still operates, a patent training center in Washington, D.C., known as its Washington Patent Operations. The purpose of the training center is to train individuals to become registered patent attorneys and to specially qualify them for patent duties within IBM. The program consists of two parts: (1) During the day, a trainee performs "on-the-job" patent duties for IBM and receives "formal patent training"; (2) during the evening, a trainee attends law school (if he has not already finished law school prior to entering the program) and must "maintain a requisite showing of progress" toward a bachelor of laws degree (LL. B.).

The manager of the Washington Patent Operations stated that "an individual can successfully complete the IBM patent training program only by meeting the requirements for assignment to an IBM patent attorney position which includes as a responsibility the giving of advice and legal counsel to appropriate IBM personnel." The failure of a participant to satisfactorily maintain a requisite showing of progress in law school over a sustained period of time will disqualify him from further participation in the program. The course of action to be taken with respect to an individual who is not maintaining a satisfactory showing at law school depends upon the fact situation in each case.

The minimum requirement for an individual to enter the training program is a B.S. or B.E. degree, or its equivalent. The "on-the-job" training at the Washington Patent Operations falls into the following categories:

(1) Preliminary, infringement, and validity study, searching, analyzing, and reporting;

(2) Writing and prosecuting patent applications;

(3) Assisting IBM patent attorneys in patent, trademark, copyright, and proprietary information activities;

(4) Classes in patent and intellectual property law for the full training period, including a special class prior to taking the Patent Office bar examination;

(5) Classes in IBM products, organization, and procedure.

Petitioner understood that as a part of the training program, he would have to attend law school, and that he would not be admitted to the program until he had been admitted to a law school in the Washington area.

IBM did not require petitioner to attend law school in order to retain his position as an electrical engineer, but petitioner understood that patent agents or patent attorneys receive considerably more money than an engineer.

In the first part of 1959, petitioner voluntarily applied to participate in the training program and was selected as a "patent trainee" in April of 1959. On May 15, 1959, petitioner applied for admission to the George Washington University Law School, and his application was accepted. After 3 months of military service, petitioner, in September of 1959, began employment as a patent trainee at IBM's Washington Patent Operations and, in the same month, started attending George Washington University Law School during evenings.

In 1962, petitioner was "writing patent applications and doing validity studies, doing preliminary novelty searches," so that during the taxable year in question, his duties were similar to those of a patent agent, a "patent professional."

During the taxable year 1962, petitioner paid to George Washington University Law School $650 for tuition and books, which amount he deducted from his adjusted gross income on his 1962 income tax return as a business expense. During that year, petitioner received, together with his salary, reimbursement from IBM for his school expenses in the amount of $487.50. Federal income taxes were withheld from the reimbursement.

On May 6, 1963, petitioner was admitted to practice before the U.S. Patent Office as a patent agent. Petitioner's title with IBM was at that time changed to "patent associate." In June 1963, petitioner received his bachelor of laws degree and was transferred back to IBM's Poughkeepsie, N.Y., office. His title was then changed to "patent agent," and he received an annual salary increase of $1,860. Petitioner, at the time of hearing, had yet to pass a bar examination, and consequently, was not yet a "patent attorney."

### OPINION

Petitioner contends that the expenses in the amount of $650 incurred and paid by him in the taxable year 1962 for tuition and books at the George Washington University Law School are deductible under the provisions of section 162(a) [2] and section 1.162-5,[3] Income Tax Regs.

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

[3] Sec. 1.162-5 Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

   *      *      *      *      *      *      *

(2) Meeting the express requirements of a taxpayer's employer, or the requirements

Petitioner argues that during 1962 he was employed by IBM as a patent trainee, and that his education was undertaken to meet the express requirements of IBM. Petitioner further argues that the expenditures were not undertaken primarily for the purpose of obtaining a new position or substantial advancement in position because a law school education is not required of patent agents. And, petitioner argues, even if the education undertaken met the requirements for a new position, the regulations make this factor irrelevant when the education is required as a condition to the retention by the taxpayer of his present employment.

Respondent contends that under paragraph (b) of section 1.162–5, Income Tax Regs., the deduction should be denied since the education was undertaken primarily for the purpose of obtaining a new position as a patent professional with IBM, and the education meets the minimum requirements for qualification or establishment in petitioner's intended trade or business of being a patent attorney. Further, respondent contends that IBM had no bona fide business purpose in requiring petitioner to attend law school since a patent agent without a law degree could perform the required patent work at IBM.

Both parties thus rely on section 1.162–5, Income Tax Regs. Petitioner does not argue that such regulations are invalid as applied to his situation, and we accordingly are concerned only with the application of the regulations. Under the regulations, the primary purpose for which petitioner undertook his education determines the deductibility of his expenditures. The business purpose of IBM in requiring petitioner to undertake the education is relevant to the decision only if it is found that petitioner undertook his education primarily to meet the express requirements of his employer.

---

of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

* * * Expenditures for education of the type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status, or employment. * * * A taxpayer is considered to have made expenditures for education to meet the express requirements of his employer only if the requirement is imposed primarily for a bona fide business purpose of the taxpayer's employer and not primarily for the taxpayer's benefit. * * *

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

Petitioner contends that the primary purpose of his expenditures for law school in the taxable year 1962 was to retain his job as a patent trainee with IBM. He was required by IBM to attend law school, and if he had not done so, he would have lost his job as a patent trainee. Petitioner thus argues that the expense of attending law school in that year was primarily for the purpose of retaining his position and not improving his position.

Petitioner relies upon *Williams* v. *United States*, 238 F. Supp. 351 (S.D.N.Y. 1965), a case involving substantially identical facts. In the *Williams* case, the taxpayer graduated from the same college as petitioner. He joined IBM's patent training program at the Washington Patent Operations. He attended the same law school as petitioner. Upon graduation from law school, he was transferred to IBM's Poughkeepsie office as a patent agent at a substantial increase in salary. A difference between the two cases is that the taxpayer in *Williams* joined the patent training program directly out of college whereas petitioner was employed by IBM as an electrical engineer prior to joining the program.

The court in *Williams* allowed the taxpayer a deduction for his expenses of attending law school on the basis that his purposes were twofold: "(1) Fulfilling the requirements of his employer imposed as a condition to the retention of his position; and (2) Seeking advancement to a new position." The court stated at page 354:

Indeed, since a condition to fulfillment of Mr. William's second purpose, promotion to the job of patent attorney, was successful completion of the term as patent trainee, retention of his job was his *most* immediate and pressing, hence, primary, purpose.

We cannot agree with the reasoning of the *Williams* case. It seems to us that the proper time to look for the primary purpose of a taxpayer in obtaining education is the time that the taxpayer first firmly decides to undertake that education. We also believe that since attendance at law school was an integral part of a program specifically designed to qualify persons for the position of patent professional with IBM, we must consider petitioner's purposes with regard to the program as a whole. We cannot, as the court did in the *Williams* case, divide the program into its component parts and consider such parts individually and separately.

If we seek the petitioner's purpose when he commenced the training program, we find that petitioner, while employed by IBM as an electrical engineer, "got the idea to become a patent attorney, or a patent agent." Petitioner then followed up this idea by talking with IBM officials about IBM's patent training program. In the first part of 1959, petitioner voluntarily applied for the program, which would lead to qualification as a patent attorney (assuming passage of a bar

examination). He knew at that time that successful completion of the program depended upon successful completion of law school, and his application to the program was at his own initiative. IBM did not require an electrical engineer to receive law school training. Accordingly, when we look at petitioner's purpose in early 1959 at the time that he first firmly decided to apply for the training program, we must reach the conclusion that petitioner undertook the program, an essential part of which was completion of law school, for the primary purpose of qualifying as a patent attorney or patent agent.[4]

There is no evidence in the record to indicate that petitioner's primary purpose changed at any time throughout his 4-year course of training and education. On the contrary, he successfully completed the patent training program and law school, and then returned to IBM's Poughkeepsie office as a patent agent. He had not, at the time this case was heard, passed a bar examination.

Certainly, during the taxable year 1962, petitioner had to attend law school and maintain a requisite showing of progress toward a bachelor of laws degree in order to remain in the patent training program. Petitioner also had to satisfactorily perform his on-the-job training in order to remain in the program. But these basic requirements did not affect petitioner's primary purpose. They were both elements of a program designed to qualify petitioner for a new profession.

Petitioner also relies on *Marlor* v. *Commissioner*, 251 F. 2d 615 (C.A. 2, 1958), reversing 27 T.C. 624 (1956). In the *Marlor* case, the taxpayer was given a temporary, 1-year appointment as a tutor in a university. He could be reappointed for a second year's term only if he pursued studies leading to a doctor's degree. He could obtain a permanent position only if he received a doctor's degree. The educational expense in the *Marlor* case was held by the Court of Appeals to have been incurred by the taxpayer primarily to retain his position as a tutor.

In the case before us, petitioner had a permanent position with IBM as an electrical engineer. Petitioner could have retained this permanent position without going to law school, but he voluntarily applied for a program that was specifically designed to qualify applicants for a new profession. In the *Marlor* case, the taxpayer could not retain a position for which he was substantially qualified unless he pursued further study.

Since petitioner, who had been qualified for work as an electrical engineer and had in fact performed work as an electrical engineer, undertook a law school education as part of a training program for the primary purpose of becoming a patent attorney or patent agent,

---

[4] Petitioner made the argument that his primary purpose was to become only a patent agent qualified to practice before the U.S. Patent Office, a purpose that did not require a law school education. Nevertheless, the route petitioner chose to fulfill this purpose was IBM's patent training program, which required attendance at law school.

we must find that his educational expenses were not the ordinary and necessary expenses of carrying on a trade or business as an electrical engineer. His primary purpose was not to maintain a present position, but to attain a new position.

Our decision is fully in accord with the decision in *Sandt* v. *Commissioner*, 303 F. 2d 111 (C.A. 3, 1962), affirming two Memorandum Opinions of this Court. There, two taxpayers were employed by E. I. duPont de Nemours & Co. as research chemists. Both taxpayers left their positions as research chemists to become patent chemists in the same department of the company. The taxpayers fully realized that, as patent chemists, they would be required to attend law school and receive L.L. B. degrees. If they did not attend law school, they would lose their jobs as patent chemists. The taxpayers obtained their law degrees and were promoted to the positions of patent attorneys (after passing bar examinations) at substantial increases in salary. The court sustained the findings of the Tax Court that the primary purpose of each of the taxpayers in attending law school had been to obtain new positions, and accordingly, the taxpayers were not allowed deductions for their educational expenses.

Petitioner's expenses incurred and paid in 1962 for tuition and books in attending law school are not deductible under section 162(a) as ordinary and necessary expenses of carrying on a trade or business, and accordingly,

*Decision will be entered for the respondent.*