Donald Y. Morrison and Francine Morrison v. Commissioner.
Morrison v. Commissioner
Docket No. 1611-68.
United States Tax Court
T.C. Memo 1970-169; 1970 Tax Ct. Memo LEXIS 188; 29 T.C.M. (CCH) 745; T.C.M. (RIA) 70169; June 23, 1970, Filed Donald Y. Morrison, pro se, 5447 Carew, Houston, Tex.Michael J. Christianson, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1965 and 1966 in the amounts of $122.54 and $142.50, respectively. The only issue for decision is whether petitioner Donald Y. Morrison is entitled to deduct as a business expense in each of the years here in issue the amount he expended for tuition and books in attending law school. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Houston, Texas, at the time of the filing of the petition in this case, filed their joint Federal income tax returns for the calendar years 1965 and 1966 with *189 the district director of internal revenue, Los Angeles, California. Donald Y. Morrison, hereinafter referred to as petitioner, is an engineer who was employed during 1964 and 1965 and part of 1966 by North American Aviation, Inc., in Los Angeles, California. During the remainder of 1966 he was employed as an engineer by Lockheed California Company in Burbank, California. During 1964 and part of 1965 petitioner's employment with North American Aviation was as a Project Coordinator Engineer. For the latter part of 1965 and the first part of 1966, he was employed as an engineer in the Space Information Systems Division of North American Aviation, Inc. The latter part of 1966, when petitioner was employed by Lockheed California Company, he did work as a project consultant engineer under its designation of "Engineering Scheduling Coordinator." Sometime in the early part of 1967 petitioner left the employ of Lockheed California Company. On his 1966 income tax return which was dated February 9, 1967, petitioner listed his employer as "Hughes Tool Co. - Aircraft Division, Culver City, Calif." and his occupation as "Consulting and Sales Engineer." During 1965, in addition to his full-time *190 employment by North American Aviation, petitioner did some parttime work for Klaas Bros., Los Angeles, California, and Evershield Products, Joppa, Maryland. In his work at both North American Aviation and Lockheed California Company petitioner dealt on a daily basis with representatives of various branches of the United States Government but primarily of the Department of Defense. He would discuss with these officials the progress on work under various contracts, negotiate changes in the specifications set forth in the contracts where the engineering department of the aircraft company found certain specifications impractical and arrange time extensions, compensation adjustments, and technical engineering adjustments to such contracts where necessary. In this work petitioner was required to ascertain from the various engineers of the aircraft company the problems involved in performance of contracts and explain these problems to the representatives of the Government. Petitioner's "job description" at Lockheed California Company contained the following with respect to "work performed" and "knowledge and ability required": WORK PERFORMED: Prepare and publish Engineering Master *191 Schedules. For this purpose analyze Design Directives. Airplane Specifications, Project Plans and any other related documents. Determine from engineering supervision the work required to be done for conformance with contracted commitments, time spans required, sequence of major functions, and consider work load, work force or faciilties to be available, and problems with vendors or other 746 conditions external to the Engineering Department which may influence the meeting of commitments. Contact various levels of Engineering Management in order to secure their approval of proposed Engineering Master Schedules, to see that all organizations involved understand their obligations under such schedules and the effect of the schedules upon the respective organizations. Follow and report on progress of engineering activities to check on conformance to schedules. Analyze delays or potential delays to determine reason therefor, and to determine means of preventing delays, or of getting delinquent projects back on schedule. Coordinate the activities of all units of the Engineering Department which are concerned with the assigned project, in order to bring about the timely completion *192 of such project. Advise Engineering units of actual or potential delinquencies, and where possible, see that the delinquent organization works out a solution for on-schedule completion of work; collaborate in planning any corrective measures as necessary. Where problems involve schedule conflicts between organizations, arrange meetings for joint solutions. Where necessary, refer difficult off-schedule problems to Engineering top management together with recommended solutions. Make recommendations to organizations within Engineering Branch, regarding preparation or revision of their detail schedules. KNOWLEDGE AND ABILITY REQUIRED: Wide knowledge of the functions performed in all units of the Engineering Branch; of the sequence of such functions, their inter-relationships and time spans. Familiarity with company activities outside of Engineering and with relationship of these activities to engineering work. A high degree of ability in maintaining good relations with business associates and in securing cooperation from them. Broad appreciation of technical operating problems; ability to lay broad schedule plans, coordinate planning and scheduling efforts of diverse Engineering *193 Organizations, resolve differences, compile results in suitable form for engineering management study for approval or decision. Ability to analyze and/or compile complex planning or operating data of all types and take or recommend action on the basis thereof in advance of any trouble spots becoming uncontrollable or overcostly. Petitioner's duties at North American Aviation were generally the same as at Lockheed. Petitioner did not draft or otherwise assist in the writing of contracts. This work was done in the legal department of the corporations by which he was employed. During World War II petitioner received certain intensive engineering training during his military service. Later while employed, petitioner received additional engineering training and took courses at the University of Detroit and Detroit Institute of Technology, thereby being considered professional as an engineer and being so classified by his employers. In addition to his work at the University of Detroit and the Detroit Institute of Technology, petitioner also took certain courses at Wayne State University and Los Angeles City College. On January 6, 1964, petitioner applied for admission to the College *194 of Law of the University of San Fernando Valley. At the time petitioner applied for admission to this university, it was relatively new and the law school had very few students and operated in only two rooms. At that time the school would accept students as degree candidates who did not have a college degree. On his application petitioner stated that he had 3 years of college. Petitioner applied for admission as a candidate for the LLB degree. He also registered his intent to seek admission to the California Bar upon completion of his studies with the proper committee of the California Bar Association. At the time petitioner applied for admission to the College of Law of the University of San Fernando Valley, the law school brochure gave no indication whether a student would be admitted other than as a candidate for the LLB degree. However, in fact the University did not require a student to be a candidate for a degree but would admit students to take certain special courses. Also a student who did not intend to take the bar examination of the State of California was not required to register such an intent with the Bar Association. Petitioner took a regular prescribed course at the *195 College of Law of the University of San Fernando Valley for a part-time student who intended to attend for 4 years to receive his LLB degree and be eligible to take the Bar of the State of California. The courses which petitioner took for the period February 12, 1964, through January 22, 1965, were: Personal Property, Agency, 747 Legal Method, Community Property, Contracts I, Torts I, and Domestic Relations. For the period February 8, 1965, through January 21, 1966, petitioner took Contracts II, Torts II, Criminal Law, Trusts, Equity I, Real Property I, and Negotiable Instruments. For the period February 14, 1966, through January 27, 1967, petitioner took Real Property II, Equity II, Criminal Procedure, Wills, Conflicts of Law, and Evidence I. At the end of his first year of work petitioner took the student bar examination which an individual was required to take at the end of his first year of law school in the State of California if he were enrolled in an unaccredited law school in order to later be permitted to take the Bar Examination of the State of California. Petitioner paid a fee to take this examination and for a review course for the examination. Petitioner on his *196 Federal income tax return for 1965 deducted $645 as a business expense for tuition and books in attending the College of Law of the University of San Fernando Valley, and in 1966 deducted $750 expended in that year for such tuition and books. On schedule D of form 2106, entitled "Additional Information to Be Furnished by Persons Claiming a Deduction for Education Expenses," attached to his 1965 income tax return, petitioner stated that the education was not undertaken in order to retain his employment, salary, or status. He stated the primary purpose of obtaining the additional education and the relationship of the courses taken to his employment during the period as follows: Work requires contract interpretation, formation of contracts, contract negotiation, knowledge of Workmens Compensation, etc., this knowledge is required to remain in this field and by usage of sales and estimating. On this schedule he stated that it was customary for other members of his profession to undertake similar education and that he was a candidate for an LLB degree. By letter dated January 26, 1967, respondent asked petitioner to furnish additional information in support of his claimed deduction *197 for educational expenses. In addition to the specific information as to amounts expended, petitioner gave the following explanation of his claimed deduction: Without ability to determine contractual requirements, interpretation, liability, directives of Federal Gov't., and other applications of the law, my position was most unstable. My value was the knowledge of the law to the maintenance of the contracts and securement of same. Study of law was necessary to retain employment, maintain position and advance. Petitioner on the form 2106 attached to his income tax return for the calendar year 1966 answered "Yes" to the question of whether his education was undertaken in order to retain his employment, salary, or status, and under the question if his answer to that question were "No" to state the primary purpose of obtaining the additional education, made the following statement: "Law for contract interpretation and knowledge of Government requirements, such as ABPR, SMXXX, and etc." Again he stated he was a candidate for the LLB degree and that it was customary for other members of his trade or profession to undertake similar education. Respondent in his notice of deficiency disallowed *198 the claimed deduction of educational expenses in each of the years 1965 and 1966 with the explanation as to the year 1965 that the amount was expended for "pursuing a program of study which will qualify you for a new trade or business." The short form of notice without explanation was used in 1966. Opinion Petitioner recognizes that under respondent's current regulations, issued in 1967 by T.D. 6918, 1967-1 C.B. 36, he would not be entitled to the claimed deductions since these regulations specifically provide that an amount is not deductible if the expenditures are made for education which is part of a program of study being pursued by a taxpayer which will lead to qualifying him in a new trade or business. Sec. 1.162-5 (b)(3), Income Tax Regs. Petitioner contends that even though respondent in his Rev. Rul. 68-191, 1968-1 C.B. 67, permitted a taxpayer for years prior to January 1, 1968, to rely either on the prior regulations or the new regulations, respondent is in effect applying the new regulations to the deductions claimed by him for 1965 and 1966. Sec. 1.162-5, Income Tax Regs., in effect during the years 1958 through 1967, for those taxpayers *199 who elect to rely upon them, provided for deductions by a taxpayer of the cost of education undertaken as a requirement of his employer in order for him to retain his position and education undertaken primarily for the purpose of "maintaining or improving skills required 748 by the taxpayer in his employment or other trade or business." It is this latter provision of the regulations on which petitioner relies. Petitioner does not now contend that he was required to take courses in law to retain his position and there is no indication from the evidence that he was. Whether the study of law is undertaken by an individual primarily for the purpose of mantaining or improving skills required of him in his employment is a question to be determined from all the facts and circumstances involved. N. Kent Baker, 51 T.C. 243, 247 (1968). This factual question is often quite difficult of determination where the education undertaken by the taxpayer is the study of law. As stated in the concurring opinion of Judge Drennen in N. Kent Baker, supra, at 249, "Admittedly, a legal education might be 'helpful' in an unlimited number of businesses. Law is a field so pervasive *200 as to be helpful to some extent in virtually every type of employment. But this does not mean that everyone who is employed is entitled to deduct the expenses of acquiring a legal education." In the instant case we do not doubt that the legal education which petitioner acquired, as did the other education which he acquired over the years by attending various colleges at night after he had completed the necessary requirements to be classed as an engineer, was helpful to petitioner. This, however, is not the issue we have to determine. We must determine whether the primary purpose for which petitioner undertook the education was maintaining or improving the skills required in his employment or other trade or business. In doing this we must consider the courses petitioner took and his other actions concerning his legal education as well as the nature of his employment. Most of the courses which petitioner took during the years 1965 and 1966 had little relationship to the type of work he did in coordinating engineering activities of the company by which he was employed with contract specification. Petitioner testified in considerable detail as to the nature of his work. From his testimony *201 it is apparent that the provisions of a contract with which he dealt were the technical engineering specifications and the adjustments he arranged for with Government officials were in the engineering work done under the contract. Even the law of contracts is not closely related to this type of work. This type of work involves engineering and not the legal aspects of a contract. The record shows that contracts of each of petitioner's employers were drawn by the legal department of the company. The drafting of the contracts was not in petitioner's province. The other courses pursued by petitioner had even less direct relationship to the work which he was doing than did his course in contracts. When a taxpayer contends that his education is undertaken primarily for the purpose of maintaining or improving his skills in his present employment but his actions contradict such contention, we must consider his statement in the light of his actions. James A. Carroll, 51 T.C. 213 (1968). In this case petitioner's actions indicate that his primary purpose in undertaking his legal education was to secure a law degree and become a lawyer. If this had not been his primary purpose, *202 he could have taken only the courses he considered helpful in his employment, it would not have been necessary for him to register his intent to take the California Bar Examination, and he would not have to take the Student Bar Examination which apparently from a statement attached to his 1966 income tax return required the expenditure of over $200 for fees and bar review courses. [1]
Upon consideration of all the evidence including the lack of direct relationship between the courses taken by petitioner and his work as well as the actions of petitioner in taking the necessary steps to be able to take the California Bar Examination and become a lawyer, we conclude that petitioner's primary purpose in undertaking a legal education was not to maintain or improve the skills required by his employment as a project coordinating engineer or in a similar position. We therefore hold that petitione has failed to prove that he is entitled to the deduction for education expense claimed by him in each of the years here in issue. Decision will be entered for respondent. 749 Footnotes
1. These expenditures were not claimed by petitioner to be deductible.↩