Louis H. ROMBACH and Ann
M. Rombach
v.
The UNITED STATES.
No. 72–68.

United States Court of Claims.
March 19, 1971.

Louis H. Rombach, pro se.  Samuel V. Abramo, Wilmington, Del., attorney of record.

Seth Stopek, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant.  Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner David Schwartz with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opin-

ion and report filed on July 20, 1970. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiffs. Defendant requested the court to adopt the commissioner's findings of fact and recommended conclusion of law. The case has been submitted to the court on the briefs of the parties and oral argument of plaintiff, Louis H. Rombach, pro se, and of defendant's attorney.

Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiffs are not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

SCHWARTZ, Commissioner:

The issue in this suit for refund of income taxes for 1961–1964 is the deductibility as a business expense of the costs to the taxpayer of his attendance at law school and admission to the bar. The

taxpayer is a du Pont research chemist who transferred to a patent law division as a trainee, pursuant to an arrangement whereby he would attend law school to train himself to become a qualified patent attorney.

Section 162 of the Internal Revenue Code of 1954 provides for the allowance as a deduction of "all the ordinary and necessary expenses paid * * * during the taxable year in carrying on any trade or business." 26 U.S.C. § 162 (1952 Ed.Supp. III). Section 262 of the Code provides that "no deduction shall be allowed for personal * * * expenses." 26 U.S.C. § 262 (1952 Ed.Supp. III). The governing regulation is § 1.162–5 of the Income Tax Regulations as adopted in 1958 (T.D. 6291, 1958–1 Cum.Bull. 63) and in effect until its amendment in 1967 (T.D. 6918, 1967–1 Cum.Bull. 36). While plaintiff may rely on either the old or the new regulation (Rev.Rul. 68–191, 1968–1 Cum.Bull. 67), the new regulation would avail him nothing, and it is not cited in his brief.

The 1958 regulation, whose relevant part is set out in the footnote,[1] provides

---

1. § 1.162–5, Expenses for education.—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. Expenditures for education of the type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education

required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status, or employment. Expenditures for education other than those so required may be deductible under subparagraph (1) of this paragraph if the education meets the qualifications of subparagraph (1) of this paragraph. A taxpayer is considered to have made expenditures for education to meet the express requirements of his employer only if the requirement is imposed primarily for a bona fide business purpose of the taxpayer's employer and not primarily for the taxpayer's benefit. Except as provided in the last sentence of paragraph (b) of this section, in the case of teachers, a written statement from an authorized official or school officer to the effect that the education was required as a condition to the retention of the taxpayer's salary, status, or employment will be accepted for the purpose of meeting the requirements of this paragraph.

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new

in subdivision (a) that expenditures are deductible if for education "undertaken primarily for the purpose" of "(1) Maintaining or improving skills required by the taxpayer in his employment," or "(2) Meeting the express requirements of a taxpayer's employer * * * imposed as a condition to the retention by the taxpayer of his salary, status or employment." Subdivision (b) provides that expenditures are not deductible "if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position * * *."

The issue, one of fact, is which of possibly multiple purposes is "primary" in the taxpayer's mind. The obvious difficulties of such a rule have led to the revision of the regulation in 1967 to eliminate the test of primary purpose.

The petitioner, Dr. Louis H. Rombach, is a highly qualified chemist, with an M.A. and Ph.D. in organic chemistry. He was employed in the Research Division of the Polychemicals Department of the du Pont Company in Wilmington until 1960, when he voluntarily transferred to the Patents and Contracts Division. That division acted as patent counsel for the Polychemicals Department; its work included investigations of patentability and the drafting of patent applications and their prosecution before the United States Patent Office.

The manager of the Patents and Contracts Division was Mr. Allan R. Plumley, a patent attorney. Mr. Plumley recruited, for his division, both law school graduates and scientists with an appropriate background. He believed strongly that legal training was necessary for full qualification as a patent attorney. With the approval of the management, he therefore required the scientist recruits to attend law school at their own expense. His expectation that in addition they qualify as attorneys by becoming admitted to a bar was tantamount to a further requirement. Accordingly, except for secretaries and a few technicians, all the members of his division were patent attorneys or were attending law school.

The scientists were required to go "up or out." A recruit from within du Pont who did not successfully complete law school would be required to leave, without any assurance of other employment in the company.

Dr. Rombach agreed to all this when he accepted the job in the Patents and Contracts Division: that during his education his job would be temporary, and that he would either succeed at law school and become a patent attorney, or leave.

On joining the Patents and Contracts Division, Dr. Rombach became a "patent chemist," or a "helper" to the patent attorneys in the division, Mr. Plumley's informal terms for what was a patent trainee. The work of a trainee consisted of patent investigations and the drafting of patent applications or portions of patent applications, in a junior capacity, under the supervision of qualified patent attorneys.

As contemplated, Dr. Rombach attended law school, registered as a patent agent with the Patent Office and passed the bar examination in two jurisdictions, the District of Columbia and Delaware. He completed the four-year night course at Temple University Law School in Philadelphia. He traveled to Philadel-

position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advance-

ment, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

phia every weekday evening, after finishing his day's work in the Patents Division in Wilmington.

Further details appear in the accompanying findings of fact, which are based on all the evidence, including the testimony given by both Dr. Rombach and Mr. Plumley. The witnesses were honest and credible men. Subjective testimony of personal knowledge and intention is, however, so affected by distance in time and personal interest and involvement as cannot prevail over inferences from action and other objective facts.

Petitioner contends that the expenditures were deductible under subparagraph (a) (1) of the regulation, as incurred for education undertaken primarily to maintain and improve the skills of patent drafting. In support, it is urged that Dr. Rombach was qualified to draft and drafted patent applications before he came to the Patents and Contracts Division; that the work of the division was essentially nonlegal; that there he continued to exercise the skill of drafting patent applications and thus that he went to law school primarily to sharpen skills he was using at the time.

■ The facts dispose of this contention. Dr. Rombach did not exercise the skills used in the Patents Division on the rare occasions when in the Research Division he drafted a portion of a patent application for an invention he himself had perfected. The work of the Patents and Contracts Division was patent work, entirely different from the research work of the Research Division. The work of the Patents Division, according to Mr. Plumley, whose word was law, required legal skills. In the Patents Division, therefore, Dr. Rombach did only prentice work; he attended law school to acquire the skills he did not already have, and was not required to have, either as a research chemist or as a patent trainee. It is no matter that as a helper in the Patents and Contracts Division he drafted applications under the supervision of qualified patent attorneys. The skills of a patent trainee, untrained in the law, are vastly different in kind from those of a qualified attorney who specializes in patent work. It therefore cannot be said that the purpose of the education was to maintain or improve the "skills required by the taxpayer in his employment" either as a research chemist or a patent trainee.

■ The next issue is whether the expenditures are deductible under subparagraph (a) (2) as undertaken primarily for the purpose of "Meeting the express requirements of a taxpayer's employer * * * imposed as a condition to the retention by the taxpayer of his salary, status or employment." The factual precondition for this contention is met. The employer, for this purpose Mr. Plumley, did in fact expressly require that Dr. Rombach attend law school and pass the bar, or lose his employment.

Thus, a purpose of Dr. Rombach was compliance with his employer's requirement. Another purpose was to become a patent attorney. The question for decision is which purpose was "primary"— retention of his job as patent trainee, as Dr. Rombach urges, or, as urged by the Government, the attainment of a new position, patent attorney. If the former, the costs are deductible under subparagraph (a) of the regulation; if the latter, they are under subparagraph (b) not deductible.

The separation of purposes into primary and otherwise is of course artificial. Dr. Rombach's purpose was in reality unitary—the achievement of the goal of the position of patent attorney upon the successful completion of law school and admission to the bar. While the program included, en route, the retention of the job as trainee while in training, its plainly predominant element was the new position of patent attorney.

The new position was more than a job. It was also a new profession, law. As a member of the bar, Dr. Rombach would be qualified to practice all forms of law, equally with other lawyers. His intended profession included even a recognized specialty—patent law—usually open only

to fully qualified lawyers who have also been educated in some technology or science.

There is no need, for the decision here, to praise the material rewards of the law as a profession, or to speak of the special rewards in this age of technology for those lawyers, skilled both in science and in patent law, who specialize in obtaining for inventors their lawful monopoly under the patent laws. Dr. Rombach's four grim years of work by day in Wilmington and schooling by night in Philadelphia attest to his drive to become a patent attorney. His pride in his achievement is suggested by the fact that he sought and obtained admission to two bars.

It is frivolous to suggest that his primary purpose was "the retention * * * of his salary, status or employment" as a temporary patent trainee. He did not give up research in chemistry and work for four years as a helper in a patent office and as a student in a law school, in order to retain his job as a patent trainee. The very purpose of the education was to bring the position as trainee to an end, and replace it with the new job of patent attorney. In the words of subparagraph (b), his education was "undertaken primarily for the purpose of obtaining a new position" as a patent attorney. Also, since he intended to become a lawyer, specializing in patent law, and since his education fulfilled the minimum requirements for that specialty, his case comes within the words of the last sentence of subparagraph (b):

> In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

While each case rests on its own facts, the present opinion is not being written on a clean slate. Similar corporate practices for the training of patent attorneys have given rise to a number of cases of taxpayers educated in a science who, as did Dr. Rombach, took a corporate job as patent trainee under an arrangement requiring successful completion of law school study. The Court of Appeals for the Third Circuit and the Tax Court have held the costs nondeductible in several of these cases: Sandt v. Commissioner of Internal Revenue, 303 F.2d 111 (3d Cir., 1962); Lamb v. Commissioner, 46 T.C. 539 (1966), appeal dismissed as moot, 390 F.2d 157 (2d Cir., 1968); Ronald F. Weiszmann, 52 T.C. 1106 (1969); Robert H. Montgomery, 23 T.C.M. 599 (1964). The first of these cases, *Sandt*, involved the very same Patents Division and the same Mr. Plumley as are involved in the instant case.

The District Court in the Southern District of New York has held the contrary, in Williams v. United States, 238 F.Supp. 351 (1965). Williams was an electrical engineer who took a job as a patent trainee with IBM in circumstances and on terms substantially identical with those in Dr. Rombach's case. He, too, was to become a lawyer or be dismissed. He too had a dual purpose, the retention of his job as trainee and the attainment of the new position of patent attorney. The district court held that "since a condition to fulfillment of [the] second purpose, promotion to the job of patent attorney, was successful completion of the term as patent trainee, retention of his job was his *most* immediate and pressing, hence primary purpose." 238 F.Supp. at 354; emphasis in original.

The "successful completion of the term as patent trainee," of which the district court spoke, is synonymous with successful completion of the educational training program. It would be strange indeed if the "primary" purpose of education were its own completion or the retention of a temporary employment which by its nature comes to an end upon completion of the education. The student waiter in the college eating hall, who holds a job open only to undergraduates, does not pursue his education for the primary purpose of keeping that job.

The retention of the job as trainee is the first objective only in time, and not the primary objective. *Williams* is unacceptable for setting a rule which ascribes primary purpose to the retention of the position as trainee merely because "successful completion of the term as patent trainee" is a condition for promotion to the job of patent attorney.

The district court in *Williams* felt that its decision was required by the decision of the Second Circuit in Marlor v. Commissioner of Internal Revenue, 251 F. 2d 615 (1958). In *Marlor,* a university tutor sought to deduct the costs of graduate studies. The case for deductibility was that he had a one-year employment contract, renewable only if he made progress towards a doctorate by pursuing his graduate education. The case for nondeductibility was that on completion of the studies, he would qualify for promotion to the permanent rank of instructor. The Tax Court held the expenditures nondeductible, and the Second Circuit reversed, in an opinion per curiam relying upon the dissenting opinion of Judge Raum below (27 T.C. 624) and Hill v. Commissioner of Internal Revenue, 181 F.2d 906 (4th Cir., 1950). Neither Judge Raum's opinion, nor the opinion in *Hill,* nor the decision on the facts in *Marlor* [2] supports the result in *Williams.*

Judge Raum's opinion was that retention of the employment as a tutor, by pursuit of the studies required for reemployment, was the taxpayer's "much more immediate objective" and therefore necessary to earn his income. Hill v. Commissioner of Internal Revenue, *supra,* cited by Judge Raum as well as by the Second Circuit in approving his opinion, is one of a number of cases holding that teachers may deduct the costs of studies undertaken to fulfill a condition for continuation of their teaching employment. *See* United States v. Michaelsen, 313 F. 2d 668 (9th Cir., 1963); Devereaux v. Commissioner of Internal Revenue, 292 F.2d 637 (3d Cir., 1961).

The rationale for deductibility in these cases, *Marlor* included, is that the teachers involved are acting throughout as teachers; their primary intention is to continue in their existing profession and employment and they take university courses in order to do so. Any purpose to qualify for salary increases or promotion is incidental and secondary.

A fundamental difference therefore distinguishes the situation of the teachers in these cases and that of the patent trainee in Dr. Rombach's circumstances. The teacher, already a teacher, faces repeated, sometimes indefinite contract renewals conditioned upon graduate study. On specified progress in his studies, he gets a raise or a promotion in rank. Out of a desire to remain in his profession and continue in his job, he undertakes the required study. Retention of his employment is to him far more important than the raise or promotion.

Dr. Rombach, on the other hand, had left a job as research chemist and entered into an arrangement whose objective was to educate him for a new profession, law, and a new position, patent attorney. He would serve temporarily as a trainee, while pursuing the education. His employment as trainee would end with completion of training and promotion, the culmination of the program. For Dr. Rombach and the other patent trainees in his situation, therefore, promotion was the thing. Unlike the teacher, the patent trainee has no profession or permanent employment in which to remain, and no wish to prolong his temporary employment as trainee. Retention of the job as patent trainee is for him an inci-

---

**2.** *Marlor* gains no additional significance here from the circumstances that once it was decided, the Government in effect conceded the judgment it had obtained in Lamb v. Commissioner of Internal Revenue, *supra,* then pending on appeal to the Second Circuit, made the refund and thereby mooted the appeal from the decision of the Tax Court. *See* 390 F.2d at 157. The Government in its brief states that Lamb v. Commissioner of Internal Revenue was settled because the amendment of the regulation was then under consideration.

dental—a necessary and temporary preliminary to the promotion to patent attorney. The cases of the teachers thus do not point towards deductibility in Dr. Rombach's case. If anything, the teachers' cases, based on their intention to continue as teachers, confirm by contrast that since Dr. Rombach had no permanent employment and did not intend to continue as a patent trainee, retention of that position was not his primary purpose.

Another illuminating group of cases concerns the deductibility of the costs of law school attendance by accountants, internal revenue agents and others. Where it is found that the primary purpose of the taxpayer was to continue in his existing work, with skills improved by training, he is held able to deduct the expense.[3] The result is otherwise, where it appears that the primary purpose in obtaining the legal education was to practice law or to obtain a new position.[4]

The conclusion that Dr. Rombach's primary purpose was the promotion to patent attorney is reached on the facts of his case, and it is consistent with the cited decisions in the Third Circuit and the Tax Court in cases of other such patent trainees. This conclusion, I believe, realistically attributes the primary purpose of his education to its overriding objective, and not to the incidental retention of his temporary employment

as patent trainee. The expenditures in issue are therefore not deductible, under the governing regulation.

In view of the conclusion it becomes unnecessary to decide whether that portion of the expenditures attributable to admission to the bar and to the cost of meals while attending law classes was as claimed by the Government not deductible in any event.

---

3. *See* Welsh v. United States, 329 F.2d 145 (6th Cir., 1964) (IRS intelligence division agent) ; Weiler v. Commissioner, 54 T.C. 398 (1970) (IRS agent) ; Milton L. Schultz, 23 T.C.M. 1372 (1964) (IRS estate tax examiner); Fortney v. Campbell, 64–1 U.S.T.C. ¶ 9489 (N.D.Tex., 1964) (IRS estate tax examiner) ; William J. Brennan, 22 T.C.M. 1222 (1963) (IRS estate tax examiner) ; Campbell v. United States, 250 F.Supp. 941 (E.D. Pa., 1966) (forensic pathologist) ; Frank Kilgannon, 24 T.C.M. 619 (1965) (accountant); Walter L. Charlton, 23 T.C.M. 420 (1964) (accountant) ; Donald P. Frazee, 22 T.C.M. 1086 (1963) (specialist in Air Force regulations on maintenance engineering) ; Richard M. Baum, 23 T.C.M. 206 (1964) (insurance adjuster).

4. Condit v. Commissioner of Internal Revenue, 329 F.2d 153 (6th Cir., 1964) (accountant) ; James J. Engel, 21 T.C.M. 1302 (1962) (IRS agent) ; Jaffe v. United States, 66–2 U.S.T.C. ¶ 9514 (S.D. Fla., 1966) (IRS agent) ; Cowan v. United States, 67–1 U.S.T.C. ¶ 9199 (S.D.Fla., 1966) (IRS agent) ; Donald Y. Morrison, 29 T.C.M. 745 (1970) (government contracts project engineer).

Compare Coughlin v. Commissioner of Internal Revenue, 203 F.2d 307 (2d Cir., 1953) with Joseph T. Booth, III, 35 T.C. 1144 (1961), respectively holding deductible and nondeductible the expenses of a practicing lawyer who took tax courses. The first case involved a tax refresher course, the second an agreement among law partners pursuant to which one of them undertook studies in order to become a tax specialist.